[Civ. No. 51670. First Dist., Div. Three. Aug. 12, 1981.]

DANNY LEWIS, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

[Civ. No. 51674. First Dist., Div. Three. Aug. 12, 1981.]

CHARLES RONALD TYNDALL, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

James R. Jenner, Public Defender, Stephen C. Thaman, Assistant Public Defender, John S. Harrison and Harrison, Taylor & Bazile for Petitioners.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and Charles R. B. Kirk, Deputy Attorneys General, for Real Party in Interest.

OPINION

**FEINBERG, J.**—These two writ petitions are consolidated on appeal because they raise a single identical issue arising from action by the Alameda County Superior Court.

The issue raised is whether statutory speedy trial rights were abridged when the primary cause for delay was a trial judge training session attended by a substantial number of judges. Specifically, the question is whether this reason supports an implicit finding of "good cause" for trial beyond the statutory limits set by Penal Code section 1382. We conclude that under the circumstances of this case good cause was not shown and the actions should have been dismissed.

Penal Code section 1382 provides that "The court, unless good cause to the contrary is shown, must order the action to be dismissed . . . .

". . . . . . . . . . . . . . . .

"2. When a defendant is not brought to trial in a superior court within 60 days after the . . . filing of the information . . ." or within 10 days of a trial date set beyond that deadline but agreed to by the defendant.

The parties agree that January 19, 1981, was the last day for trial of either defendant absent a showing of "good cause." On that date, both defendants (charged in separate cases) appeared before the master calendar judge. The cases were placed on "standby" because there were no courts available.[1] The following day, they remained on "standby" status for the same reason. Defendant Lewis moved to dismiss for violation of Penal Code section 1382 and both defendants pointed out that a courtroom without a judge was available. The motion to dismiss was denied, the court commenting that it did not know of any retired judge or other person who might be appointed to sit pro tempore in the open department.

On January 21, 1981, defendant Tyndall unsuccessfully moved to dismiss. Lewis' case was assigned to department 12 for trial, but the prior trial in that department had not yet ended. The next day, Tyndall's case was assigned to department 12 for trial. Thus, both defendants were

---

[1]According to petitioner Lewis, his counsel had been informed on January 5, 14, and 16, 1981, that no courts were available for trial.

first sent to a court capable of conducting trial on January 22, 1981. Before these trials began, we issued stays in order to review denial of the two motions to dismiss.

The trial court denied the motions to dismiss on the ground that no court was available during the crucial period. The circumstances causing this unavailability were not developed during the hearings. These circumstances are critical under the decision in *People* v. *Johnson* (1980) 26 Cal.3d 557, 571 [162 Cal.Rptr. 431, 606 P.2d 738], where the court stated: "A defendant's right to a speedy trial may be denied simply by the failure of the state to provide enough courtrooms or judges to enable defendant to come to trial within the statutory period. The right may also be denied by failure to provide enough public defenders or appointed counsel, so that an indigent must choose between the right to a speedy trial and the right to representation by competent counsel. '[U]nreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal-justice system are limited and that each case must await its turn.' (*Barker* v. *Wingo, supra,* 407 U.S. 514, 538 [33 L.Ed.2d 101, 121, 92 S.Ct. 2182], ...)

"The American Bar Association's Standards for Speedy Trial (ABA Project on Standards for Crim. Justice, Stds. Relating to Speedy Trial (Approved Draft 1968)) discusses the problem of delay caused by court congestion. It states that 'delay arising out of the chronic congestion of the trial docket should not be excused .... [¶] But, while delay because of a failure to provide sufficient resources to dispose of the usual number of cases within the speedy trial time limits is not excused, the standard does recognize congestion as justifying added delay when "attributable to exceptional circumstances." Although it is fair to expect the state to provide the machinery needed to dispose of the usual business of the courts promptly, it does not appear feasible to impose the same requirements when certain unique, nonrecurring events have produced an inordinate number of cases for court disposition.' (Pp. 27-28.)"

Exhibits lodged with the People's opposition to these petitions explain the reasons why no court was available to try these defendants. Petitioners do not contest the accuracy of these exhibits, which may properly form a basis for our decision. (See *Rice* v. *Superior Court* (1975) 49 Cal.App.3d 200, 202-203, and fn. 1 [122 Cal.Rptr. 389].)

The exhibits contain a detailed chart showing the activities or assignments of the various superior court judges on January 16, 19, 20, and 21, 1981. A letter from the court executive officer explains the difficulties in obtaining assignment of a pro tempore judge on short notice. His letter and a three-page attachment mention the various options available for bringing petitioners to trial in time and state the disadvantages to each of ten options.

It is not our function to interfere with the trial court in its administration of the calendar or assignment of judges. However, because of the principles stated in *People* v. *Johnson, supra*, we are obliged to determine whether the delays here are "attributable to exceptional circumstances" or merely arise out of chronic trial docket problems. Only in the former circumstances is "good cause" shown.

Court congestion can have as its source an increase in cases ready for trial or a decrease in available courts or a combination of both factors. Thus, either an extraordinary increase in caseload or an extraordinary circumstance causing the absence of available judges can justify a finding of good cause for delay.

The People assert the latter justification: "Apparently the great problem was the absence of a number of judges who were attending a program at the California Center for Judicial Education and Research sponsored by the Judicial Council. . . . This, of course, was a *unique* problem; the judges attending a program never before available and for which reservations had been made months in advance."

■ We question the assertion that a judicial training program presents a "*unique* problem" merely because the training program is being given for the first time. More importantly, however, we do not see the training program as the *cause* of the court congestion which led to the delay. For, while it could be foreseen that the problem that developed *might* arise, it could not be foretold that it *would* arise. The cause, as we see it, was the trial court's failure to recall judges from the conference to try these cases.

Much as continuing education for judges is a desideratum, we must conclude that the trial court erred in favoring those benefits by denying the rights of these defendants to be tried within the time limits specified by Penal Code section 1382. The evidence shows that on each day, from January 19 through January 21, 1981, between 5 and 7 judges from the

37-judge court were attending or teaching in the "mid-career" training program in Berkeley, California. We take judicial notice of the fact that the location was within minutes of the Oakland courthouse. No good reason appears why one or more of these judges could not have been recalled to try these cases.

This is not a situation in which judges were *unavailable* because of prior commitments.[2] Rather, it is one in which a tacit choice was made that attendance at the training sessions took precedence over speedy trial rights of the defendants. We do not believe the trial court is permitted to make such a choice and then justify it by asserting "exceptional circumstances."

We conclude that "good cause" for delay in petitioners' trials has not been shown and that the trial court therefore erred in failing to dismiss.[3] Let peremptory writs of mandate issue, directing the trial court to dismiss the action against each defendant.

White, P. J., and Scott, J., concurred.

---

[2]Our question is simpler than the one which would be presented if judges were attending a conference in a remote location and the court could not have anticipated the congestion without guessing that a certain number of defendants might withdraw time waivers. It is also simpler than variations which might arise because of judicial vacation schedules which conflict with cases pushing the statutory speedy trial limits. We need not reach these more difficult questions because in our case the problem was only partly one of planning and more centrally one of improper priority. Here, easily cancelled plans were allowed to control over speedy trial rights when the court failed even to attempt to recall a judge or judges from the training session.

[3]We need not reach the question of whether the trial court's failure to notify the Judicial Council of the speedy trial problem as required by Penal Code section 1050 mandates dismissal.