[No. S081186. Aug. 10, 2000.]

TODD RUSSELL STROUD, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

TYRONE FRANKLIN SWAIN, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

Counsel

Daniel G. Davis and Dennis A. Fischer for Petitioner Todd Russell Stroud.

Michael P. Judge, Public Defender, Jeri Polen and John Hamilton Scott, Deputy Public Defenders, for Petitioner Tyrone Franklin Swain.

No appearance for Respondent.

Gil Garcetti, District Attorney, Brent Riggs and William Woods, Deputy District Attorneys, for Real Party in Interest.

Opinion

**BAXTER, J.**—Here we consider issues concerning the application of Penal Code section 861. This statute requires dismissal of a criminal complaint if the preliminary examination is not completed in "one session . . . , *unless* the magistrate, for *good cause* shown by affidavit, postpones it." (*Ibid.*, italics added.)[1]

During a preliminary examination of capital defendants in custody, the parties stipulated to minor interruptions for their convenience and waived, on the record, the continuous conduct of the examination during those particular periods. Then, on the fourth day of the examination, which by then had already continued well past an original time estimate, the magistrate announced that on the Friday four days thence, he would be attending a one-day Judicial Council task force meeting in a distant location. No defendant objected until a day and a half before the meeting was to occur.

[1]Penal Code section 861 provides: "(a) The preliminary examination shall be completed at one session or the complaint shall be dismissed, unless the magistrate, for good cause shown by affidavit, postpones it. The postponement shall not be for more than 10 court days, unless either of the following occur: [¶] (1) The defendant personally waives his or her right to a continuous preliminary examination. [¶] (2) The prosecution establishes good cause for a postponement beyond the 10-court-day period. If the magistrate postpones the preliminary examination beyond the 10-court-day period, and the defendant is in custody, the defendant shall be released pursuant to subdivision (b) of Section 859b. [¶] (b) The preliminary examination shall not be postponed beyond 60 days from the date the motion to postpone the examination is granted, unless by consent or on motion of the defendant. [¶] (c) Nothing in this section shall preclude the magistrate from interrupting the preliminary examination to conduct brief court matters so long as a substantial majority of the court's time is devoted to the preliminary examination. [¶] (d) A request for a continuance of the preliminary examination that is made by the defendant or his or her attorney of record for the purpose of filing a motion pursuant to paragraph (2) of subdivision (f) of Section 1538.5 shall be deemed a personal waiver of the defendant's right to a continuous preliminary examination."

All further statutory references are to the Penal Code unless otherwise indicated.

The magistrate attended his Friday meeting, and no proceedings in the preliminary examination were held on that day. The examination resumed on the following Monday and was completed around noon of the immediately following Wednesday. The defendants were bound over for trial. The superior court denied their motions to set aside the information for violation of section 861. (§ 995.) However, the Court of Appeal granted their consolidated petitions for writ of prohibition, ordering that no further proceedings be conducted under the information except to dismiss it and set it aside.[2]

We granted review to consider the two issues raised in the People's petition. First, the People argue that defendants' stipulations to particular interruptions in the examination waived the "one session" rule for all purposes, thus permitting any and all further postponements regardless of the circumstances. We will conclude this contention must fail. The specificity of the stipulations themselves belies defendants' intent to waive any other interruptions. Moreover, the People's broad theory entirely contravenes the statutory purpose of a prompt, continuous, and expeditious preliminary examination.

We will, however, accept the People's alternative argument, based on the "good cause" exception set forth in section 861, that the magistrate's one-day absence to attend his meeting was not grounds for dismissal of the complaint. As we will explain, the good-cause determination depends on the totality of pertinent circumstances in each case, with due regard for the right of an accused person, particularly one in custody, to obtain an expeditious determination of probable cause. The standard of appellate review is abuse of discretion.

Applying these principles here, we will find the magistrate did not abuse his discretion when he determined, in effect, that he had good cause for his one-day absence. A judicial officer's outside administrative duties, such as attendance to Judicial Council business, are not *in and of themselves* sufficient cause to delay a preliminary examination, where proper planning would have avoided the conflict. Indeed, judicial officers should make every reasonable effort to avoid situations in which such outside business might interrupt ongoing preliminary examinations.

Here, however, the record suggests the conflict arose only because the examination had long exceeded its original time estimate. Moreover, though

---

[2]The defendants in the underlying criminal action were petitioners in the extraordinary writ proceeding in the Court of Appeal, which is the matter before us on review. The People, who were respondents in the Court of Appeal, are petitioners in this court in the sense that they filed the petition for review. For convenience, and to avoid confusion, the defendants in the underlying criminal action will be referred to collectively as defendants, or individually by their last names, Stroud and Swain, and the People will be referred to by that name.

the magistrate announced his meeting plans once the conflict became apparent, defendants substantially delayed their objection. These facts, not improper planning, made it impracticable to accommodate defendants, such as by reassigning the case or holding extended sessions to complete the examination before the magistrate's departure. Given the overall length of the examination, the magistrate's explicit determination that he "must" attend the meeting, the brevity of his absence, the dearth of other interruptions (except by stipulation or, as authorized by statute, for other *court* matters), and the lack of any claim or showing that defendants would suffer prejudice beyond one extra day in custody, the one-day postponement did not violate section 861.

We will therefore reverse the judgment of the Court of Appeal.

## FACTS

·A complaint charged defendants jointly with one count of first degree murder with a robbery-murder special circumstance, and three counts of robbery, all with firearm-use enhancements. Various prior convictions were also alleged against both defendants. Both were in custody pending the preliminary examination.

The preliminary examination began at 2:05 p.m. on Wednesday, July 22, 1998.[3] Almost immediately, the prosecutor asked to interrupt the next day's proceedings by 10:30 a.m. so she could attend a meeting. Counsel for Stroud responded that his client was not prepared to waive his right to a continuous session. The proceedings continued, and were adjourned for the day at 5:12 p.m.

The next morning, Thursday, July 23, the examination recommenced at 9:56 a.m. Counsel advised the court that all parties had agreed the examination would adjourn that day at 10:30 a.m. so the prosecutor could attend her meeting; would resume the next morning, Friday, July 24; would adjourn on Friday, July 25, at noon to allow defense counsel to review the prosecutor's notes of witness interviews; then would resume a normal schedule on Monday, July 27. The magistrate indicated he would ask the defendants to "waive[] a continuous prelim basically *all the way until Monday*" to resolve all scheduling problems. (Italics added.)

The magistrate thereupon explained to defendants that they were statutorily entitled to a "continuous preliminary hearing." This, he said, "basically means . . . a preliminary hearing without interruption, [where] I devote

---

[3]All further date references are to the year 1998.

most of my resources to the . . . hearing," a "singular continuous prelim where that is what we do each day," except for minor diversions for other judicial business. According to the magistrate, the proposed Thursday and Friday breaks "would mean that we would not be doing your preliminary hearing continuously because I will be doing other work."

The magistrate then asked Swain, "do you agree to waive . . . your right to a continuous preliminary hearing *with the understanding* that we would *do this matter on Monday*, but we would have *interruptions today and tomorrow*?" (Italics added.) Swain agreed. The magistrate then asked Stroud, "do you . . . waive your right to a continuous preliminary hearing *for at least Thursday and Friday*, that we're only going to do this part-time, and I'm going to be doing other work?" (Italics added.) Stroud agreed. Counsel for both defendants joined the waivers.

The preliminary examination adjourned at 10:36 a.m. on Thursday, resumed at 9:16 a.m. on Friday, and adjourned at 11:30 a.m. on Friday. Proceedings resumed at 10:46 a.m. on Monday, July 27. During the proceedings on Monday afternoon, the magistrate remarked, "I don't know if I should reveal this. Do you know that we're not going to be in session on Friday [July 31]?" The prosecutor said, "no." The magistrate explained, "[w]ell, we're not, and it won't violate anybody's rights because I will be in San Francisco attending a meeting of the Judicial Council." The court suggested this would not contravene the one-session rule because he would not be interrupting the examination to perform "other work," i.e., other judicial duties within the municipal court.

No party responded to the magistrate's announcement. The matter arose again later Monday afternoon during a discussion about how to schedule an on-call witness, Detective Perkins. Swain's counsel, obviously referring to the magistrate's impending absence, remarked, "Let's tell Detective Perkins we don't have to worry about Friday." The magistrate confirmed that "[t]here won't be any court proceedings [on Friday] as far as I know." Defendants raised no protest at this time or during the proceedings on the following day, Tuesday, July 28.

Near the end of the day on Wednesday, July 29, during another discussion of witness scheduling, Stroud's counsel asserted that "we have tomorrow and Friday" to put the witness on the stand. The magistrate responded, "Friday we're dark. I'm not here." Stroud's counsel objected, noting that "we could be through with the prelim." The magistrate answered, "That's too bad. I won't be here on Friday. I have judicial business with the Judicial Council, and as far as I know, I'm not violating anybody's rights by not working on Friday."

Stroud's counsel renewed his objection "under the single-session rule unless you want to release my client until you come back." Acknowledging that Stroud would remain in the "hoosegow" during his absence, the magistrate nonetheless reiterated his view that "[t]he single-session rule requires, when I'm in session, that I devote all—substantially most of my time to his case. I won't be in session on Friday." Stroud's counsel replied that the one-session statute "exists" so these "serious matters" will be "complete[d]," and that there was a chance to finish by Friday. The magistrate replied that the hearing might be completed on Thursday, but if not, on Monday. "I won't be here on Friday."

The witness-scheduling discussion resumed. During the discussion, the court expressed frustration at the length of the proceedings, noting that "[t]his case came in for a day-and-a-half estimate. We've been doing it for five days." Stroud's counsel interjected, "I never gave it that estimate."

The next morning, Thursday, July 30, at the beginning of the day's proceedings, the magistrate made a statement for the record concerning his impending absence. He noted the objection of Stroud's counsel, and explained that "on Friday I am going to a drug oversight community meeting in San Francisco. It was scheduled months ago. It is part of the Judicial Council." The magistrate reiterated that "when this case came into my court on Wednesday last week, it was indicated on the filing that it was a day-and-a-half prelim." He estimated that, even after counting breaks and recesses, at least five full days had already been devoted to the examination, which "has exceeded the estimate by about three and a half times; and when I took the case that is what I was told." He explained again "[his] reading of the code section that there is no violation of a continuous preliminary hearing if I'm not in session. But . . . I'm not going to have some kind of vacation. I'm involved in judicial work on Friday, and I must be there, and I'm one of 12 members of the state that are considering this particular meeting agenda." Stroud's counsel again objected.

At 2:10 p.m. on Thursday, the magistrate announced an adjournment so he could attend to drug court matters. Stroud's counsel objected, and alternatively asked if the magistrate would consider resuming the examination after his drug court calendar was complete. The magistrate initially demurred, but ultimately agreed to do so. The proceeding recessed at 2:16 p.m., then resumed with the cross-examination of a prosecution witness at 4:07 p.m. The matter was adjourned at 4:35 p.m.

Proceedings resumed at 9:00 a.m. on Monday, August 3. Stroud's counsel immediately moved to dismiss the complaint on grounds that the magistrate's absence on part of Thursday, and all of Friday, violated the one-session rule. Swain's counsel joined the motion. The magistrate denied it,

explaining that the bulk of Thursday had been devoted to the preliminary examination, and "[a]s I indicated on Friday, I went to the Judicial Council, and I believe I was not in session, and therefore, the rule was not violated."

The proceedings of Monday, August 3, were recessed at 12:10 p.m. They resumed, after lunch and a drug court session, at 2:46 p.m. and were adjourned for the day at 4:30 p.m. On Tuesday, August 4, proceedings resumed at 9:20 a.m. The lunch recess occurred at 12:05 p.m., and proceedings resumed, after a drug court session, at 2:55 p.m. The examination was adjourned at 4:30 p.m. On Wednesday, August 5, proceedings resumed at 9:00 a.m., and evidence was concluded during the morning. Both counsel renewed their dismissal motion at the conclusion of evidence. The court implicitly denied the motion and held defendants to answer. Proceedings were concluded at 11:54 a.m.

An information charged each defendant with one count of murder (§ 187) with a robbery-murder special circumstance (§ 190.2, subd. (a)(17)), three counts of robbery (§ 211), and three counts of assault with force likely to produce great bodily injury (§ 245, subd. (a)(1)), all with allegations of personal firearm use (§ 12022.5, subd. (a)), prior serious or violent felony convictions (§§ 667, 1170.12), and, in Stroud's case, prior prison sentences (§ 667.5, subd. (b)). Each defendant timely filed a superior court motion to set aside the information. (§ 995.) Among other things, each asserted he had not been "legally committed" by the magistrate. (*Id.*, subd. (a)(2)(A).) The asserted ground of illegality was violation of section 861, the one-session rule, by numerous interruptions of the preliminary examination, including the early adjournment on Thursday, July 30, and the full-day interruption of Friday, July 31.

The superior court denied the motion. As to the asserted violation of section 861, the court deemed the issue to be whether "a substantial majority of the [magistrate's] time [was devoted] to the preliminary hearing. And if not, were the defendants denied some substantial right." By the court's calculation, except for the recess of Friday, July 31, the magistrate had given defendants' preliminary examination an average of four hours and 13 minutes per day, over six and one-half court days, while attending to other matters the statute specifically permitted him to handle. As the court explained, "When I look at the entire record of this case, the five lengthy volumes of transcripts totaling more than 1320 pages, I find that the magistrate devoted a substantial majority of the court's time to the preliminary hearing. And I do believe that the defendants were not deprived of a substantial right by the single day recess that was taken by the magistrate."

Each defendant sought a writ of prohibition from the Court of Appeal, Second Appellate District, Division Four. The appellate court consolidated

the proceedings. On its own motion, the Court of Appeal obtained copies of documents attesting that the magistrate had been reappointed by the Chairperson of the Judicial Council, effective July 15, 1998, as one of 14 members of the Judicial Council's Oversight Committee for the California Drug Court Project, also known as the Drug Court Task Force. After soliciting objection and receiving none, the Court of Appeal took judicial notice of these documents. (Evid. Code, § 459; see also *id.*, § 452, subds. (b), (c).)

In an opinion certified for publication, the Court of Appeal agreed with defendants that the magistrate had denied them their right, under section 861, to a preliminary examination in one session, and that their commitment was therefore illegal. The appellate court ordered issuance of a writ of prohibition directing that no further proceedings occur on the information and that it be set aside.

The Court of Appeal rejected the People's contention that by consenting to early adjournments on Thursday, July 23, and Friday, July 24, defendants waived all rights to a continuous session thereafter. Nonetheless, the appellate court found no violation of the one-session rule when the magistrate attended to his drug court calendar for a time on the afternoon of Thursday, July 30; this was an interruption to conduct "brief court matters" as specifically authorized by section 861, subdivision (c).

However, the Court of Appeal concluded that the magistrate's unconsented-to absence for one full court day on Friday, July 31, to attend the Judicial Council's Drug Court Task Force meeting violated the one-session statute. The Court of Appeal dismissed the People's threshold argument that a "session" could not be interrupted by a time during which the magistrate's court was not in "session" at all. Moreover, the Court of Appeal held, the magistrate's nonmandatory meeting was not good cause to interrupt the examination. Nor, the Court of Appeal determined, was the superior court correct that, because the magistrate devoted the substantial majority of his work time to defendants' preliminary examination, the one-day recess denied them no substantial right requiring dismissal of the information. The Court of Appeal reasoned that the one-day postponement of July 31, without the good cause required by section 861, was itself the denial of a substantial right, which rendered defendants' commitment invalid.

Finally, the Court of Appeal ruled that Swain, like Stroud, had standing to pursue the issue by a motion under section 995. The appellate court noted that although Swain's counsel, unlike Stroud's, did not object prior to the magistrate's July 31 absence, Swain's counsel later joined Stroud's motion

before the magistrate to dismiss the complaint, explaining at that time that in view of the repeated and unsuccessful protests of Stroud's counsel, she (Swain's counsel) had believed any further objection would be futile.

We granted review.

## DISCUSSION

The parties have narrowly framed the issues for review. The People omit their earlier arguments (a) that section 861 did not apply during a day when, because of the magistrate's absence, his court was not otherwise in "session," (b) that the section 995 motion was properly denied because any interruption of the examination denied defendants no substantial right,[4] and (c) that by his silence prior to the magistrate's absence, Swain waived any complaint on that score. By the same token, defendants filed no answers to the People's petition for review. Accordingly, defendants could not, and did not, raise additional issues in this court (see Cal. Rules of Court, rules 28(e), 29.3(c)), such as an objection to the Court of Appeal's ruling that section

---

[4]Though the issue is thus not before us, we note the following: Section 995 requires that an information be set aside upon the defendant's motion if, among other things, "before the filing [of the information] the defendant had not been legally committed by a magistrate." (*Id.*, subd. (a)(2)(A).) In *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519 [165 Cal.Rptr. 851, 612 P.2d 941] (*Pompa-Ortiz*), we deemed it "settled that the denial of a *substantial right* at the preliminary examination renders the ensuing commitment illegal and entitles a defendant to dismissal of the information on timely motion. [Citations.]" (*Id.*, at p. 523, italics added; see also, e.g., *People v. Coleman* (1988) 46 Cal.3d 749, 773 [251 Cal.Rptr. 83, 759 P.2d 1260].) Among the illustrative citations used in *Pompa-Ortiz* to support the quoted statement was "*People v. Bucher* (1959) 175 Cal.App.2d 343 [346 P.2d 202] [(*Bucher*)] [§ 861—examination in one session]." (*Pompa-Ortiz, supra*, at p. 523.) Indeed, shortly after *Pompa-Ortiz* was decided, a 1980 amendment to section 861 specified that a criminal complaint "*shall* be dismissed" (italics added) if the preliminary examination thereon is not completed in "one session" unless "good cause" for the interruption is shown. (§ 861, as amended by Stats. 1980, ch. 938, § 2, p. 2965.) The effect of the amendment was to "compel the *magistrate" himself* to dismiss the complaint if the one-session rule was violated. (*Ramos v. Superior Court* (1982) 32 Cal.3d 26, 30-31, fn. 4 [184 Cal.Rptr. 622, 648 P.2d 589], italics added; *Landrum v. Superior Court* (1981) 30 Cal.3d 1, 5-6, fn. 4 [177 Cal.Rptr. 325, 634 P.2d 352].) Under current law, it thus seems to follow that *if* a violation of section 861 occurred, and the magistrate nonetheless refused to dismiss the complaint, the defendant's subsequent commitment was not legal, and he was thus deprived of a substantial right for which *pretrial* relief is available under section 995, even if he suffered no prejudice beyond the interruption or delay itself. (But see, e.g., *People v. Guevara* (1982) 132 Cal.App.3d 193, 201-202 [183 Cal.Rptr. 18] (*Guevara*) [suggesting *both* that § 861 is not violated by brief interruptions for other judicial business *and* that dismissal of information on § 995 motion may be abuse of discretion where interruption denied defendant no substantial right]; see also *Pompa-Ortiz, supra*, at pp. 527-530 [illegality in preliminary examination is no basis for reversal on appeal from fair trial absent showing of prejudice].)

861 permitted the magistrate to attend to "brief court matters," i.e., his drug court calendar, on Thursday, July 30.[5]

We are thus left with two arguments pursued by the People. First, the People contend that by agreeing to early adjournments on Thursday, July 23, and Friday, July 24, defendants waived all further delays or postponements, including the magistrate's full-day absence of Friday, July 31, because the examination, once interrupted with their consent, could not thereafter be completed in a single session. Second, the People urge that in any event, the "good cause" provision of section 861 allowed the magistrate to interrupt the examination to attend his business meeting. We address these questions in turn.

The requirement of a one-session preliminary examination has existed in some form in our statutes since 1851. (See Stats. 1851, ch. 29, § 149, p. 228.)[6] The one-session rule is one of several constitutional and statutory provisions intended to promote the interests of the defendant, the People, and society at large, in the expeditious resolution of criminal charges. (See, e.g., U.S. Const., Amend. VI [speedy trial]; Cal. Const., art. I, §§ 14 [arraignment without unnecessary delay], 15 [speedy trial]; Pen. Code, §§ 859b [preliminary examination within specified time after arraignment], 1050 [limit on postponement or continuance of criminal proceedings], 1382 [speedy trial].)

■ It has been said that the purpose of section 861, requiring completion of a preliminary examination in "one session," is to "see to it that no one is detained in custody indefinitely or capriciously in order that a case may be developed in the future, or circumstances arise that will justify a trial." (*Bucher, supra*, 175 Cal.App.2d 343, 346.) More generally, the statutory requirement that a preliminary examination, once begun, should be completed in one session appears aimed, like the rule for prompt *commencement*

---

[5]Defendants have also not challenged in this court the Court of Appeal's determination that though section 861 contemplates an *affidavit* of good cause, and though such an affidavit would have been desirable, its absence is not dispositive where the magistrate stated at length, in open court, his reasons for interrupting the hearing, and the veracity of those reasons is not disputed. We caution, however, that in general, a magistrate who proposes, on his own motion, to interrupt a preliminary examination for good cause should, as the statute specifies, file an affidavit detailing the reasons for his decision.

[6]Section 149 of chapter 29 of the 1851 Statutes provided: "The examination must be completed at one session unless the Magistrate for good cause shown adjourn it. The adjournment cannot be for more than two days at each time, nor more than six days in all, unless by consent or on motion of the defendant." This language was incorporated with few changes as section 861 of the 1872 Penal Code. The 1872 version added "shown by affidavit" after "cause" in the first sentence, and "adjourn" and "adjournment" were replaced, respectively, by "postpones" and "postponement." (Ann. Pen. Code § 861 (1st ed. 1872, Haymond & Burch, Commrs.-annotators) p. 292.) The section thereafter remained unchanged until amended in 1980 and 1981 to its current form.

of the preliminary examination,[7] at ensuring that one does not languish unnecessarily in custody, or under the cloud of a criminal complaint, without a judicial finding of probable cause. (Cf., e.g., *People v. Alvarez* (1989) 208 Cal.App.3d 567, 576 [256 Cal.Rptr. 289] (*Alvarez*); *Serrato v. Superior Court* (1978) 76 Cal.App.3d 459, 467 [142 Cal.Rptr. 882] (*Serrato*).)

■ The settled meaning of a single "session," for purposes of section 861, derives from *In re Karpf* (1970) 10 Cal.App.3d 355 [88 Cal.Rptr. 895] (*Karpf*). There, the court rejected the argument that the examination must be completed in a single "day." (*Id.*, at p. 365.) Instead, *Karpf* held, a "session" is " 'an actual sitting continued by adjournments in ordinary course from day to day, or over Sundays and holidays, but not interrupted by adjournment to a distant day.' " (*Ibid.*, quoting *United States v. Dietrich* (C.C.D.Neb. 1904) 126 Fed. 659, 660.) Such a "postponement," *Karpf* noted, "is different from a temporary cessation or interruption in proceedings compelled by the needs of the human body . . . or to observe a legal holiday." (*Karpf, supra,* at p. 366; accord, *People v. Castagnola* (1972) 28 Cal.App.3d 882, 887 [105 Cal.Rptr.62] (*Castagnola*).)

In *Serrato* the court stated that although section 861 allowed normal recesses, breaks, and adjournments for nights, weekends, and holidays, the statute nonetheless "contemplate[d] a continuance of an already commenced preliminary examination from day to day, *uninterrupted by any intervening judicial business.* [Citation.]" (*Serrato, supra,* 76 Cal.App.3d 459, 466, italics added.)

In apparent response to *Serrato*, the 1981 Legislature amended section 861 to specify, in addition to the rule allowing interruptions for "good cause," that "[n]othing in this section shall preclude the magistrate from interrupting the preliminary examination to conduct brief *court matters* so long as a substantial majority of the court's time is devoted to the preliminary examination." (§ 861, subd. (c), as amended by Stats. 1981, ch. 854, § 2, pp. 3277-3278, italics added; see *Guevara, supra,* 132 Cal.App.3d 193, 201.)

A. *Did defendants waive all further continuity by stipulating to specific interruptions? No.*

■ As noted, the People suggest defendants waived the one-session rule for all purposes by consenting to early adjournments on Thursday, July 23, and Friday, July 24, for the convenience of counsel. Like the Court of Appeal, we reject this argument.

---

[7]Under section 859b, a preliminary examination must begin within 10 days after the defendant is arraigned or pleads, whichever occurs later, except in specified circumstances.

At the outset, it is clear that neither the magistrate, defendants, nor their counsel intended such a broad waiver. On Thursday, July 23, counsel announced their agreement that for specific reasons, the examination would adjourn at specific times on that and the following day. The magistrate responded that he would seek a waiver "until Monday" to be safe. He then asked Swain to waive his rights "with the understanding that we would do this matter on Monday [July 27], but . . . would have interruptions *today and tomorrow*." (Italics added.) He asked Stroud to waive his rights "for at least Thursday [July 23,] and Friday [July 24]." (See *ante,* at p. 959.) Thus, the parties' waivers were manifestly with respect to specific dates and times only. There is no basis to conclude that the parties knowingly and voluntarily waived all further interruptions and postponements of the preliminary examination.

However, the People insist that such a waiver arose by operation of law. They analogize to *Alvarez, supra,* 208 Cal.App.3d 567. *Alvarez* construed section 859b, which provides, inter alia, that the preliminary examination shall *commence* within *10* court days after the defendant's arraignment or plea on the complaint unless all parties waive that right or good cause for a continuance appears, and in any event, that the complaint shall be dismissed if the preliminary examination is "set or continued more than *60* [court] days" after the arraignment or plea unless the defendant personally waives that right. (Italics added.)

In *Alvarez,* the defendant, acting on the last day of the 10-day period, waived his right to 10-day commencement of the preliminary examination. The magistrate thereupon continued the examination to a date within the 60-day period. Later, without obtaining a new waiver, the magistrate further continued the examination, though still within the 60-day period. Concluding that a new time waiver was required, the superior court granted the defendant's section 995 motion to dismiss the information. However, the Court of Appeal reversed. It reasoned that by the plain language of section 859b, once the defendant waived his right to *commencement within 10 days*, that right was waived for all purposes. Thus, the magistrate could continue the matter further beyond the 10-day period without a new waiver, provided that the matter could not be set or continued beyond 60 days " 'unless the defendant personally waive[d] his or her right to a preliminary hearing within the 60 days.' " (*Alvarez, supra,* 208 Cal.App.3d 567, 572, quoting § 859b.)

Similarly here, the People suggest, defendants had a right to a one-session preliminary examination, but once the proceeding was postponed with their consent, thus irrevocably destroying its continuity from beginning to end, a

one-session examination was no longer possible, and that right was therefore entirely waived. We are not persuaded. As the instant Court of Appeal noted, section 861, unlike section 859b, contemplates a right that does not culminate at a fixed moment in time. On the contrary, the purpose of section 861 is to ensure that, once commenced, the preliminary examination will proceed continuously onward, and be expeditiously completed, without significant interruptions to which the parties have not consented, and which are not justified by good cause. (See *Alvarez, supra,* 208 Cal.App.3d 567, 576.)

Section 861 makes clear that its protections do not end with the first significant breach in the continuity of the examination, even where good cause for the interruption has been established. The statute provides, for example, that a good cause postponement shall not exceed 10 court days unless the defendant personally waives the longer delay (*id.,* subd. (a)(1)) or the People make a specific showing of its necessity (*id.,* subd. (a)(2)), and that the delay shall in any event not exceed 60 days "unless by consent or on motion of the defendant" (*id.,* subd. (b)).

Under these circumstances, it would make no sense to interpret the defendants' consent to a particular interruption, limited by its terms to a specific date, time, and duration, as a waiver of all further continuity in the proceedings, thereafter allowing any and all postponements the magistrate might deem convenient. We decline to do so. We conclude that defendants, by agreeing to the early adjournments of Thursday, July 23, and Friday, July 24, did not thereby waive the right to subsequent completion of their preliminary examination by continuous session.

B. *In light of the particular circumstances, was the magistrate's one-day postponement permissible under the good-cause provision of section 861? Yes.*

 The People claim the one-day postponement was permissible for a second reason, and the Court of Appeal erred by concluding otherwise. Like other statutes requiring the timely commencement and prompt completion of criminal proceedings (see, e.g., §§ 859b, subd. (b) [commencement of preliminary examination], 1050, subd. (e) [continuances of criminal hearings], 1382, subd. (a) [speedy trial]), section 861 nonetheless provides an exception for postponements upon "good cause."(§ 861, subd. (a).) Thus, by definition, neither section 861 nor any right it grants is violated if, pursuant to the statute's terms, an interruption of the preliminary examination was authorized by the good-cause provision. Here the People urge section 861's good-cause provision allowed the magistrate to interrupt defendants'

examination in order to attend his single-day business meeting. Under the particular circumstances presented, we agree.[8]

■　We first note the long-standing general rule that continuances for good cause lie within the sound discretion of the presiding court. (*People v. Johnson* (1980) 26 Cal.3d 557, 570 [162 Cal.Rptr. 431, 606 P.2d 738] (*Johnson*) [trial continuance].) Under this rule, appellate review of such postponements is for abuse of discretion. (*People v. Memro* (1995) 11 Cal.4th 786, 852 [47 Cal.Rptr.2d 219, 905 P.2d 1305] [same].) These rules have developed in the context of appeals after trial delays. ■　Here, instead, defendants have sought extraordinary writ review of a superior court's ruling, in a pretrial proceeding under section 995, on their claim that the one-day postponement of their preliminary examination violated section 861 and thus rendered their commitment illegal. But the basic principle of review is no different. The issue, for purposes of section 995, is simply whether the magistrate abused the sound discretion accorded him by section 861's good-cause provision, and thus violated that statute, when he interrupted defendants' preliminary examination to attend his San Francisco meeting.

No reported case specifically discusses what good cause may allow the magistrate, on his own motion, to depart from section 861's general rule that a preliminary examination, once commenced, shall be completed in one session.[9] In the analogous area of criminal trials, however, the cases impose certain limits on a court's discretion to delay the commencement or completion of such proceedings.

---

[8]The People do not suggest that this full-day postponement in the preliminary examination of a custodial defendant, during which the magistrate was absent from his court and did not attend to other cases on his docket, was merely an interruption to deal with "brief court matters" as expressly sanctioned by section 861, subdivision (c). Nor, as noted above, do they pursue before us the theory advanced by the superior court, when denying defendants' section 995 motion, that there was no denial of a substantial right because the magistrate devoted a substantial majority of his time to the preliminary examination over the entire period during which it was pending.

[9]Among the modern cases, only one has found that an information was properly dismissed on grounds that section 861 had been violated. *Bucher, supra,* 175 Cal.App.2d 343, concluded that dismissal of a complaint under section 995 was not an abuse of the superior court's discretion where, without an affidavit of good cause, the magistrate granted the People's request to recess a custodial defendant's preliminary examination from one afternoon until the next morning to allow the prosecution to serve an additional witness. The Court of Appeal stressed that section 861 was specifically intended to preclude arbitrary deprivation of the accused's liberty while the preliminary examination was delayed to allow the prosecution to bolster the case for probable cause. (175 Cal.App.2d at p. 346.)

Two cases have concluded that recesses there at issue did *not* violate section 861, but these decisions did *not* discuss the "good cause" provision of the statute. In *Castagnola, supra,* 28 Cal.App.3d 882, the Court of Appeal reversed a section 995 order granting dismissal of a complaint. The Court of Appeal concluded that no "postponement," within the meaning of section 861, had occurred when the magistrate recessed the preliminary examination of a noncustodial defendant from 12:00 noon one day until 8:30 a.m. the next to allow the parties

■ Thus, it is well settled that postponements or interruptions arising from the laziness or indifference of either counsel, or from chronic or routine court congestion caused by improper court administration or by the state's failure to provide the judges and facilities necessary to meet the foreseeable caseload, is no excuse for infringing an individual defendant's rights to expeditious treatment. (E.g., *Johnson, supra,* 26 Cal.3d 557, 570-571 & fn. 13 [statutory right to speedy trial]; *Rhinehart v. Municipal Court* (1984) 35 Cal.3d 772, 781-782 [200 Cal.Rptr. 916, 677 P.2d 1206] (*Rhinehart*) [same].) " '[U]nreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal-justice system are limited and that each case must await its turn.' " (*Johnson, supra,* at p. 571, quoting *Barker v. Wingo* (1972) 407 U.S. 514, 538 [92 S.Ct. 2182, 2196, 33 L.Ed.2d 101] (conc. opn. of White, J.).) On the other hand, scheduling conflicts arising from " 'exceptional circumstances,' " i.e., " 'unique [and] nonrecurring events,' " may sometimes justify particular delays. (*Johnson, supra,* at p. 571; *Rhinehart, supra,* at p. 782.)

Scrutiny of the case law suggests that the determination whether delays caused by judicial schedule conflicts were abuses of discretion must proceed case by case, applying principles of common sense to the totality of circumstances, including the reason for the conflict, the length of the delay, the extent to which it could have been avoided by proper planning and allocation of judicial resources, the frequency, duration, and cause of any prior interruptions, and any evidence, available to the presiding court at the time it ordered the postponement, that the delay would work against the defendant's litigation interests. (See, e.g., *People v. Ruiz* (1988) 44 Cal.3d 589, 617 [244 Cal.Rptr. 200, 749 P.2d 854] [conduct of capital trial on schedule of three and one-half days per week was justified where trial judge had separate administrative responsibility of managing law and motion calendar; no indication that nonsequestered jury was unduly exposed to outside publicity during recesses]; *Rhinehart, supra,* 35 Cal.3d 772, 783 [six-day delay in commencement of trial was not justified on grounds assigned judge was on vacation, particularly where trial was further delayed, without explanation, after judge returned]; *People v. Santamaria* (1991) 229 Cal.App.3d 269, 277

---

to prepare points and authorities on an evidentiary issue raised by the People. (*Castagnola, supra,* at pp. 887-888.) Again in *Guevara, supra,* 132 Cal.App.3d 193, the Court of Appeal reversed a section 995 order dismissing an information for violation of section 861. The municipal court had recessed the examination of a noncustodial defendant from 5:10 p.m. on one day until 3:00 p.m. on the next so it could resume a jury trial already in progress. After the examination, but before the decision on appeal, section 861 was amended to specifically allow interruptions of a preliminary examination for other "brief court matters." (*Id.,* subd. (c).) In light of this expressed legislative intent, the Court of Appeal concluded the recess was not a forbidden "postponement" and that the noncustodial defendant had suffered no denial of a substantial right. (*Guevara, supra,* at pp. 198-202.)

[280 Cal.Rptr. 43] [defendant's right to expeditious disposition was violated when trial court suspended capital jury deliberations for 11 days; record disclosed no administrative duties, congested calendar, or any other exceptional circumstances; lengthy delay substantially increased the risk of juror taint; there appeared no indication of effort to appoint substitute judge to monitor jury deliberations during original judge's absence]; *People v. Gopal* (1985) 171 Cal.App.3d 524, 545 [217 Cal.Rptr. 487] [exceptional circumstances justified 10-and-one-half-week hiatus in criminal trial where, after trial exceeded original two-month estimate, presiding judge was forced to resume administrative duties during unprecedented courtwide docket crisis which required his attention]; *People v. Engleman* (1981) 116 Cal.App.3d Supp. 14, 20-21 [172 Cal.Rptr. 474] [three-week trial recess between prosecution and defense cases was not justified where outside judge assigned to try case returned home to conduct other judicial business; arrangements for reassignment should have been made; timing of hiatus risked tainting jury, which had heard only prosecution's evidence].)

■ Moreover, in evaluating whether delays in preliminary examinations were permissible for good cause, we must consider the particular purpose of section 861 to ensure that accused persons, particularly those in custody, will not languish unduly under a criminal complaint before a judicial officer has found the evidence against them sufficient to warrant a trial. We apply these principles here.

■ We first examine the reason for the magistrate's absence from the preliminary examination on Friday, July 31. The absence was not for the magistrate's mere personal convenience, nor did it stem from routine court congestion that simply forced incarcerated defendants to wait their turn. Instead, the magistrate traveled to San Francisco for the long-scheduled meeting of a statewide Judicial Council task force, of which he was a duly appointed member.

Defendants point out that no provision of the Constitution, statutes, or court rules strictly mandated the magistrate's attendance at the task force meeting. Like the Court of Appeal, defendants also stress two appellate decisions which held that judicial absences to attend conferences were not valid excuses for the trial delays there at issue. (*Lewis v. Superior Court* (1981) 122 Cal.App.3d 494, 499 [176 Cal.Rptr. 80] (*Lewis*); *People v. Katzman* (1968) 258 Cal.App.2d 777, 789 [66 Cal.Rptr. 319] (*Katzman*).) Similarly here, defendants urge, the magistrate's task force meeting could not supersede an ongoing preliminary examination, even for a single day.

We agree that neither Judicial Council business, nor any other educational, organizational, or community obligation accepted by a court officer,

is good cause *in and of itself* to excuse the explicit statutory responsibility for expeditious completion of an ongoing preliminary examination. (8) Judicial officers should exert every reasonable effort to prevent such outside obligations from interfering with ongoing examinations. However legitimate the reasons for a court officer's schedule conflicts, resulting postponements of a preliminary examination may be without good cause where they are frequent or lengthy, where they substantially extend a defendant's custody before the issue of probable cause has been resolved, where they may otherwise disadvantage the defendant's litigation position, or where they might have been avoided by proper planning.

■ For the most part, however, such factors are not present in this case. The magistrate was absent only for a single court day. There were no other interruptions of the examination except by the parties' consent or, under the specific authority of a separate provision of section 861, for "brief court matters" (*id.*, subd. (c)). The magistrate knew, of course, that defendants would spend an additional day in custody on capital charges without a determination that the evidence against them warranted a trial. However, neither defendant claimed he would suffer any litigation prejudice because of the one-day hiatus. There is no indication the prosecution intended to use the delay to bolster its case for probable cause. (See *Bucher, supra,* 175 Cal.App.2d 343, 346.)

Moreover, and most important, it appears the conflict could not have been remedied or accommodated by any practical and appropriate allocation of judicial resources. The magistrate's meeting had been scheduled "months ago," at a site far from his Southern California courtroom. The meeting thus required significant travel, for which arrangements presumably had long been made. Furthermore, the conflict was apparently unforeseen. The magistrate twice stated on the record that when the case came to him on Wednesday, July 22, it had a time estimate of one and one-half days.[10] Thus, at the outset, there was no apparent need for the magistrate to reassign the matter to ensure that, despite his July 31 obligation, the preliminary examination would be completed in one session.

However, on Monday, July 27, four days before the meeting, when the preliminary examination was still in progress and it had become clear a

---

[10]Defendants point out that the People did not submit, as exhibits in opposition to the petitions for writ of prohibition, any documentation or other evidence corroborating the magistrate's representation that he received a one-and-one-half-day estimate for the preliminary examination. Nor, defendants observe, have the People shown the source or basis of this estimate. Assuming that any burden of clarifying the point fell on the People, we do not find the omission fatal. We see no reason to doubt the accuracy or veracity of the on-the-record statements by the magistrate, a judicial officer. Moreover, the magistrate's statements implied, and it is logical to assume, that the estimates to which he referred were routinely supplied and relied upon as scheduling aids.

conflict might arise, the magistrate did announce his impending absence. Neither defendant raised any protest. Later on Monday afternoon, the issue arose again in connection with the scheduling of a witness. Again no objection was raised. Indeed, as noted above, Swain's counsel remarked the witness should be told "[not] to worry" about attending court on Friday. (See *ante,* at p. 959.)

No defendant objected until Stroud's counsel did so on the afternoon of Wednesday, July 29, scarcely more than one court day before the magistrate's scheduled absence. We do not suggest the objection was untimely as a technical matter, or that defendants waived the delay by failing to protest sooner. Nonetheless, the timing of the objection is relevant to the totality of circumstances bearing on the issue of good cause itself. This is because the extremely short notice further undermined the magistrate's ability to make necessary plans to remedy the conflict.

On the one hand, though the record does not tell us the exact nature of the scheduled meeting, or of the magistrate's participatory role, the magistrate obviously understood that his presence, expected and long planned, was important. As he indicated in open court, "I'm one of 12 members of the [committee] that are considering this particular meeting agenda," and "I must be there." Yet the lateness of defendants' protest foreclosed any meaningful effort to reschedule the meeting or accommodate his absence therefrom.[11]

On the other hand, it would have been equally impractical to accommodate defendants, once the examination was well under way, by transferring the proceedings in midstream to another court, or by substituting another magistrate for a single day. Moreover, with only one full court day remaining before the scheduled absence, the option of expediting the matter to completion by holding extended sessions in the interim was severely compromised.[12] Indeed, Swain's counsel conceded at oral argument that by the time the first objection was raised, the magistrate had no realistic means of meeting both of his conflicting obligations.

---

[11]The dissent suggests that regardless of the circumstances leading up to the scheduling conflict, the task force meeting was not important enough to delay a preliminary examination of defendants in custody. Despite any shortness of notice, the dissent asserts, the magistrate's only choice was to cancel his meeting plans, report to work, and continue the preliminary examination. However, applying an abuse of discretion standard, we cannot lightly second-guess the magistrate's own determination of the significance of the meeting.

[12]Such an approach would have required, at a minimum, that witnesses be rescheduled to inconvenient hours on abrupt notice. Moreover, the efficacy of implementing an accelerated schedule at such a late date is highly questionable in hindsight. As noted above, when the preliminary examination resumed on the morning of Monday, August 3, it thereafter proceeded for the better part of two and one-half court days. Hence, it appears unlikely that reasonable extended proceedings on the evenings of Wednesday, July 29, and Thursday, July

Defendants insist they never gave or agreed to an abbreviated time estimate for the preliminary examination. In any event, they assert, a one-and-one-half-day estimate was manifestly unrealistic for a case involving capital charges, two defendants, and multiple crimes. They urge that the magistrate should thus have foreseen the conflict and taken it into account at the outset of the preliminary examination.

We are not persuaded. There is no necessary inference that preliminary examinations will be protracted, even where serious charges are involved. Constitutional and statutory measures, adopted as Proposition 115 at the June 1990 election, have expedited such proceedings by allowing the People to make probable cause showings through the hearsay reports of qualified police officers. (Cal. Const., art. I, § 30, subd. (b); Pen. Code, § 872, subd. (b); Evid. Code, § 1203.1.) Moreover, while defendants may present rebuttal cases at their preliminary examinations, they often elect not to do so in order to avoid revealing defense strategies before trial. Under these circumstances, we cannot conclude the magistrate should have foreseen, at the outset of the preliminary examination, the conflict that ultimately arose.[13]

Accordingly, we conclude that the magistrate did not abuse his discretion by determining, in effect, that he had good cause for a one-day absence from the preliminary examination.[14] The one-day delay, caused by official business that the magistrate believed required his attendance at a long-scheduled meeting in San Francisco, was not an inexcusable chronic or routine schedule conflict arising from insufficient judicial resources or improper judicial planning. On the contrary, it was an exceptional circumstance that justified the magistrate's decision to allow a short interruption of the preliminary examination. On these facts, the magistrate was not forced to miss his long-scheduled meeting unless, at the last minute, he could somehow juggle and divert scarce judicial resources to avoid even a single day of unconsented delay. A contrary conclusion would imply intolerable burdens both on

30, would have resulted in completion of the examination before the magistrate's absence. By the same token, there is little chance defendants could have been spared the inconvenience of spending the *weekend* of Saturday, August 1, and Sunday, August 2, in custody without a probable cause finding.

[13]If, at the outset of a preliminary examination, there appears any reasonable possibility that outside demands might conflict with the uninterrupted completion of the examination, it is, of course, prudent and preferable for the magistrate to take immediate steps to determine whether the case should be reassigned so the examination can be completed in a single session.

[14]We say "in effect" because, in his several remarks on the subject, the magistrate never directly cited the "good cause" provision of section 861. Indeed, as described above, certain of his comments suggest he believed the one-session rule could not be violated during a time when he was away from court, and thus was not in "session" at all. The dubious merits of that view are not before us, but we are satisfied from the magistrate's statements that, given the perceived importance of his meeting, and the brevity of the delay, he considered his absence to be with good cause.

the necessary attention of judicial officers to their public responsibilities, and on the docket management issues faced daily by a criminal court system already strained to capacity.[15]

Finally, our conclusions are not altered by the *Lewis* and *Katzman* decisions, noted above. In our view, the circumstances of those cases are materially distinguishable, and their holdings are not inconsistent with the views we express here.

Thus, in *Katzman, supra*, 258 Cal.App.2d 777, an already-continued trial was scheduled to begin on March 21. A week *before* that date, the court announced that after jury selection, no evidence would be taken until April 4, when the judge would return from a judicial conference scheduled to begin on March 28. The jury was selected on March 21 and 22, after which no further proceedings occurred until April 4. Under these circumstances, the Court of Appeal concluded, the judge's "schedule [was] an insufficient excuse for [the] delay. [Citations.]" (*Id.*, at p. 789.) Instead, the court "should . . . have transferred the case to another department in which trial could be *commenced without interruption* [on] March 21." (*Ibid.*, italics added.) No similar option arose in the matter before us.

In *Lewis, supra*, 122 Cal.App.3d 494, five of the Alameda County Superior Court's 37 judges were simultaneously absent from their Oakland courtrooms on a particular court day to attend a judicial training conference in Berkeley. As a result, unforeseen docket congestion arose, and no departments were available to timely begin defendants' trials. Before the Court of Appeal, the People argued that dismissal was nonetheless unwarranted, because the one-time training conference was a unique cause of the court congestion that delayed defendants' cases. However, the Court of Appeal, noting that the conference was located within minutes from the courthouse, saw no reason why at least some of the several absent judges could not have been recalled to confront the unexpected docket congestion and provide timely trials. (*Id.*, at p. 499.)

Here, there was no mass depletion of judicial resources leading to a docket logjam which might well have been anticipated and which defendants had no

---

[15]Defendants suggest the magistrate should have explored the possibility of participating in the Judicial Council task force meeting by telephone conference call, thus eliminating the need for time-consuming travel to and from San Francisco. (Cf. Cal. Rules of Court, tit. 6, Jud. Admin. Rules, rule 6.33 (eff. Jan. 1, 1999).) Of course, we encourage the consideration of all options, including teleconferencing, which might allow a judicial officer to attend to outside business without significant interruption of an ongoing criminal proceeding. Here, however, there is no indication that travel time, as such, was a significant factor in the need for the interruption. For all that appears, the magistrate's participation in the meeting itself, even if by telephone, would still have consumed an entire court day.

opportunity to protest. On the contrary, a preliminary examination already well under way was briefly interrupted by a single judicial officer's effort to fulfill his long-standing committee responsibility at a distant location. The conflict arose because the examination itself exceeded scheduling estimates, and though defendants were warned in advance, they raised no protest until it was too late for proper judicial planning to remedy the conflict. Under these circumstances, we find the holding of *Lewis* of little relevance here.

The Court of Appeal therefore erred in holding that the magistrate's one-day absence from defendants' preliminary examination to attend a Judicial Council task force meeting was without good cause, and that the complaints against defendants must therefore be dismissed. Accordingly, we must reverse the judgment of the Court of Appeal.

DISPOSITION

The judgment of the Court of Appeal is reversed.

George, C. J., Kennard, J., and Chin, J., concurred.

**WERDEGAR, J.,** Dissenting.—The majority finds good cause to postpone a preliminary examination in the magistrate's desire to attend a Judicial Council advisory committee meeting. I find no good cause, and therefore dissent.

Penal Code section 861 does not define good cause. It provides only that "[t]he preliminary examination shall be completed at one session or the complaint shall be dismissed, unless the magistrate, for good cause shown by affidavit, postpones it." Lacking a definition, the statute unavoidably requires us to make a value judgment: Was it more important for the magistrate to stay in Los Angeles to finish the preliminary hearing in one session or to travel to San Francisco to discuss drug courts? In my view, the question is not close. The magistrate's job—his reason for being a magistrate—is to hear and decide the cases assigned to him. We judges cannot allow this essential public responsibility to take second place to the internal affairs of the judicial branch.

Before today, it was understood that a judge's desire to attend meetings, seminars, and conferences did not afford good cause to delay a trial. (See *Lewis v. Superior Court* (1981) 122 Cal.App.3d 494, 496-499 [176 Cal.Rptr. 80]; *People v. Katzman* (1968) 258 Cal.App.2d 777, 787-789 [66 Cal.Rptr. 319].) A fortiori, such events cannot afford good cause to postpone a preliminary hearing. When a case comes to trial, a magistrate has already

conducted a preliminary examination and found sufficient cause to believe the defendant has committed an offense. During the preliminary examination, however, a person charged with an offense is held on suspicion only. For this reason, the Legislature and the courts have jealously protected such a person's right not to be imprisoned longer than necessary before cause has been found; thus the single-session rule set out in Penal Code section 861 and the requirement, absolute on its face, that the complaint be dismissed when the rule is violated. Such laws "are designed to protect the rights of the accused and to see to it that no one is detained in custody indefinitely or capriciously in order that a case may be developed in the future, or circumstances arise that will justify a trial. The interests of society do not demand, and the rights of the individual forbid, such an invasion of personal liberty." (*People v. Bucher* (1959) 175 Cal.App.2d 343, 346 [346 P.2d 202].)

One can imagine committee meetings important enough to warrant postponing a preliminary hearing, such as the meetings that followed the Loma Prieta and Northridge earthquakes to consider how the affected courts in San Francisco and Los Angeles might be enabled to reopen for business. But nothing suggests the business of the Drug Court Advisory Committee on Friday, July 31, 1998, had that degree of urgency. The 13-member committee had already been meeting for two years. In July 1998, the committee had just been reappointed for a third year and charged with "providing to the Judicial Council by March 1, 1999, a report on its recommendations for the extension, expansion or replacement of the Drug Court Committee and its responsibilities." (Judicial Council of Cal., Oversight Com. for the Cal. Drug Ct. Project, memo. to the Judicial Council, Mar. 10, 1999, p. 3.) As it turns out, the committee deemed it necessary to have an executive committee discuss the directive further at a weekend retreat in September. Under these circumstances, one cannot but conclude the magistrate's attendance at the July meeting was less urgent than his remaining in Los Angeles to determine promptly whether sufficient cause existed to hold defendants over for trial.

Accordingly, I see no need for a detailed examination of the circumstances that influenced the magistrate's decision to close his courtroom and travel to San Francisco. He should simply have reported to work on Friday and conducted the preliminary examination. The other 12 members of the committee could and would have carried on without him. If he chose, the magistrate could also have participated in part of the meeting by telephone. (Cf. Cal. Rules of Court, tit. 6, Jud. Admin. Rules, rule 6.33 (eff. Jan. 1, 1999).) In any event, like the judge who heard the motion to dismiss and presumably is far more conversant than this court with the practices of the Los Angeles County Superior Court, I attribute "no weight at all" to the magistrate's assertion that the preliminary examination was originally estimated to require one and a half days, and the argument that the scheduling

conflict was therefore unavoidable, because the magistrate "did not [in] . . . five volumes of transcripts . . . ask counsel what the estimate was." Indeed, the magistrate had no reason to ask because he mistakenly believed that closing his courtroom on Friday did not implicate the single-session rule.

Thus, assuming for the sake of argument the majority is correct that we review a finding of good cause to delay a preliminary hearing under the abuse of discretion standard (see maj. opn., *ante*, at pp. 968, 973), we still would not be able to uphold the postponement in this case because the magistrate below simply failed to exercise his discretion: He made no finding of good cause because he erroneously believed the statute did not apply. Nor, in any event, does the abuse of discretion standard adequately explain the majority's conclusion. The majority writes that, "applying an abuse of discretion standard, we cannot lightly second-guess the magistrate's own determination of the significance of the meeting." (Maj. opn., *ante*, at p. 972, fn. 11.) To the contrary, we must set the limits of discretion to avoid fostering a system in which reviewing courts simply defer to magistrates' subjective, idiosyncratic notions of good cause, however unimportant the conflicting demands on their time may be in comparison with the constitutional and statutory imperatives served by prompt, continuous preliminary hearings. Unless we have met our responsibility to declare the limits of discretion, the abuse of discretion standard is no standard at all.

Of the five judges who ruled on this matter before it came to this court, *none* concluded that the advisory committee meeting constituted good cause to postpone the preliminary examination. The magistrate, as mentioned, mistakenly believed that Penal Code section 861 did not apply during his absence. The judge who heard the motion to dismiss erroneously treated the day's postponement as an interruption for "brief court matters" (*id.*, subd. (c)) and thus found it permissible because the magistrate, over the entire course of the preliminary examination, had devoted the substantial majority of his time to the examination. The three justices of the Court of Appeal, who first squarely addressed the question of good cause, unanimously found no good cause and ordered the complaint dismissed subject to the People's right to refile. We should do likewise.

Mosk, J., and Brown, J., concurred.