Filed 7/11/13  P. v. Big Oil & Tire CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE ex rel. GREG SOUNHEIN, | C066021 |
| Plaintiff and Appellant, | (Super. Ct. No. 34200800016772CUMCGDS) |
| v. | |
| BIG OIL & TIRE CO. et al., | |
| Defendants and Appellants. | |

*Qui tam* plaintiff Greg Sounhein appeals from a defense judgment on his False Claims Act cause of action (Gov. Code, § 12650 et seq.)[1] after the granting of a motion for judgment in a nonjury trial (Code Civ. Proc., § 631.8).  The trial court concluded that it lacked jurisdiction under section 12652, former subdivision (d)(3)(A), which stated in

---

[1]  Further undesignated statutory references are to the Government Code.

1

pertinent part that "[n]o court shall have jurisdiction over an action under this article based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in an investigation, report, hearing, or audit conducted by or at the request of the Senate, Assembly, auditor, or governing body of a political subdivision, or by the news media, unless . . . the action is an original source of the information."[2] Sounhein contends the trial court erred in concluding it lacked jurisdiction because there was no public disclosure, and even if there was, the disclosure was not made in any of the statutorily enumerated forums, and in any event, he was the original source of the information.

Defendants Big Oil & Tire Co. (Big Oil) and its president Richard Pomrehn appeal from postjudgment orders denying their motion to strike and/or tax Sounhein's cost bill and awarding Sounhein costs in the amount of $10,298.79. They contend the trial court erred in declaring plaintiff the prevailing party because the focus of the litigation was the

---

[2] Effective January 1, 2013, subdivision (d)(3)(A) and subdivision (d)(3)(B) were added to section 12652. (Stats. 2012, ch. 647, § 3.) Subdivision (d)(3) now provides in pertinent part:

"(A) The court shall dismiss an action or claim under this section, unless opposed by the Attorney General or prosecuting authority of a political subdivision, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in any of the following:

"(i) A criminal, civil, or administrative hearing in which the state or prosecuting authority of a political subdivision or their agents are a party.

"(ii) A report, hearing, audit, or investigation of the Legislature, the state, or governing body of a political subdivision.

"(iii) The news media.

"(B) Subparagraph (A) shall not apply if the action is brought by the Attorney General or prosecuting authority of a political subdivision, or the person bringing the action is an original source of the information."

2

False Claims Act cause of action, and the only relief he received in connection with his other cause of action for violations of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) was injunctive. Alternatively, defendants assert that Sounhein should be denied all costs incurred after March 31, 2010, the date on which defendants made an offer to compromise pursuant to Code of Civil Procedure section 998, which Sounhein rejected.

We shall conclude that the trial court erred in ruling that it lacked jurisdiction over Sounhein's False Claims Act cause of action because even assuming there has been a public disclosure of allegations or transactions substantially similar to those that form the basis of Sounhein's cause of action, there is no evidence the disclosure was made in one of the statutorily enumerated forums. (§ 12652, former subd. (d)(3)(A).) Accordingly, we shall reverse the judgment entered in favor of defendants as to the False Claims Act cause of action and remand the matter to the trial court for a new trial limited to determining the amount of penalties and damages, liability having been established in connection with the unfair competition cause of action. We shall further conclude that the issues raised in defendants' appeal concerning the cost award have been rendered premature by our decision to reverse the judgment in defendants' favor on the False Claims Act cause of action.

FACTUAL AND PROCEDURAL BACKGROUND[3]

Big Oil owns and operates approximately 13 gas stations in several small towns along the North Coast. Pomrehn has an ownership interest in and is the president of Big Oil. Sounhein is an environmental consultant, doing business as SounPacific, who was

---

[3] We set forth the facts in the light most favorable to the judgment as we must. (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528.)

3

hired by Big Oil to perform environmental services related to the cleanup of releases from underground storage tanks for several of its properties.

At all relevant times herein, the parties agreed that SounPacific would be paid for its services after Big Oil was reimbursed for such services by the state's Underground Storage Tank Cleanup Fund (Fund).[4] "Wait-and-pay" arrangements were commonly used by Fund claimants, like Big Oil, during the relevant time period. Claimants that utilize wait and pay arrangements must pay all reimbursed costs they have incurred, but have not yet paid, "[w]ithin 30 days of receipt of reimbursement from the Fund . . . . If a claimant has not paid such costs within 30 days, the claimant shall return the unpaid funds to the Board."[5] (Cal. Code Regs., tit. 23, § 2812, subd. (g).) Pomrehn submitted certifications signed under penalty of perjury along with his requests for reimbursement indicating he would comply with the 30-day requirement.

Claimants that utilize wait and pay arrangements also are required to submit "proof of payment" that in the form of a cancelled check showing that they paid the previous reimbursement to the service provider before the Fund will process any subsequent reimbursement requests. Fund staff routinely review the cancelled checks to make sure that claimants are complying with the 30-day requirement, and violations are noted.

During the years that Sounhein served as Big Oil's environmental consultant, some reimbursement payments were made more than 30 days after Big Oil was reimbursed by the Fund. By early 2005, Fund manager Allan Patton was aware that

---

[4] In 1989, the state established the Fund to reimburse underground storage tank "owners who take ' "correction action," ' i.e., clean up a leakage or a spill." (*Kelsoe v. State Water Resources Control Bd.* (2007) 153 Cal.App.4th 569, 573; see also Health & Saf. Code, §§ 25299.14, 25299.55.)

[5] "Board" refers to the State Water Resources Control Board, which administers the Fund. (*Canal Street, Ltd. v. Sorich* (2000) 77 Cal.App.4th 602, 604.)

defendants were not remitting payment to service providers within 30 days of claim reimbursements.  As Fund manager, Patton had authority to act with respect to the late payment issue.

When Big Oil received a reimbursement, it was deposited into Big Oil's operating account, and payments were made to SounPacific from that account.  In 2007, Big Oil experienced severe cash flow issues, and Pomrehn began intentionally diverting reimbursement funds to pay for Big Oil's business expenses, excluding SounPacific.  As a result SounPacific was unable to pay its vendors and had to lay off about a dozen employees.

When SounPacific began to experience its own cash flow problems, Sounhein directed his employees to investigate the cause of the shortfall and learned that Big Oil was being paid by the Fund but was not paying SounPacific on time.  Sounhein sought the assistance of Fund personnel to induce Big Oil to tender payment to him.  On June 27, 2008, Fund personnel instructed defendants to either pay SounPacific reimbursements Big Oil had received on eight claims (13556, 13557, 13559, 13560, 13779, 16921, 17560 and 18098) or return the monies to the Fund.

Over the next two months, after funds became available, both from a commercial lender and the Fund, and following the filing of a lawsuit in Humboldt County by Sounhein against defendants, defendants paid SounPacific.  In many cases, SounPacific was paid many months after Big Oil was reimbursed by the Fund.**6**

---

**6** The following chart details each of the claims at issue in this case, including the date Big Oil deposited each Fund payment, the date Sounhein was paid, and the number of days in between.

| Claim No. | Execution Date | Fund Payment | Amt. | Date Deposited | SounPacific Paid | Days |
|---|---|---|---|---|---|---|
| 13553 | 11/19/07 | 2/19/08 | $7,363 | 2/28/08 | 8/18/08 | 172 |

5

On July 23, 2008, Sounhein initiated the instant action, alleging two causes of action: the first for violations of the False Claims Act, which he brought as a *qui tam* relator on behalf of the state; and the second for violations of the unfair competition law, which he brought in his individual capacity. The unfair competition cause of action was predicated, in part, on defendants' alleged violations of the False Claims Act.

A bench trial was held in July 2010. At the close of Sounhein's case, defendants moved for judgment in their favor as to both causes of action. (Code Civ. Proc., § 631.8, subd. (a).)[7] As to the False Claims Act cause of action, defendants argued the trial court

| | | | | | | |
|---|---|---|---|---|---|---|
| 13553 | 11/19/07 | 2/19/08 | $5,968 | 2/28/08 | 8/18/08 | 172 |
| 13555 | 4/2/07 | 1/30/08 | $19,049 | 2/8/08 | 8/12/08 | 186 |
| 13556 | 6/22/07 | 2/22/08 | $14,973 | 3/7/08 | 8/18/08 | 164 |
| 13558 | 6/20/07 | 1/10/08 | $25,672 | 1/23/08 | 8/1/08 | 191 |
| 13559 | 12/6/07 | 5/9/08 | $14,706 | 5/20/08 | 8/20/08 | 92 |
| 13560 | 9/6/06 | 2/28/07 | $22,399 | 3/9/07 | 5/1/07 | 53 |
| 13560 | 6/8/07 | 11/27/07 | $37,150 | 12/6/07 | 7/11/08 | 218 |
| 13562 | 11/26/07 | 2/7/08 | $5,996 | 2/20/08 | 8/18/08 | 180 |
| 13782 | 11/14/07 | 2/19/08 | $16,591 | 2/28/08 | 8/18/08 | 172 |
| 13816 | 10/23/07 | 1/23/08 | $15,682 | 2/1/08 | 7/11/08 | 161 |
| 16921 | 10/23/07 | 1/24/08 | $11,356 | 2/4/08 | 7/11/08 | 158 |
| 16921 | 10/23/07 | 1/24/08 | $2,173 | 2/4/08 | 7/11/08 | 158 |
| 18097 | 10/19/07 | 2/14/08 | $15,324 | 2/28/08 | 8/18/08 | 172 |
| 18098 | 11/2/07 | 1/16/08 | $20,226 | 1/28/08 | 8/1/08 | 186 |

[7] Code of Civil Procedure section 631.8 provides in pertinent part: "(a) After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the

lacked subject matter jurisdiction because the Fund knew about late payment issues relating to Big Oil *before* Sounhein brought it to the Fund's attention. As to the unfair competition cause of action, defendants argued Sounhein lacked standing to pursue it, or alternatively, failed to present evidence sufficient to support it.

The trial court granted the motion as to the False Claims Act cause of action and denied it as to the unfair competition cause of action. In its statement of decision, the trial court found that it lacked jurisdiction over the False Claims Act cause of action based on Patton's testimony that "he was aware of late payment issues relating to defendants as early as 2005 -- a period antedating Sounhein's claim as 'original source.' " As for the unfair competition cause of action, the trial court rejected defendants' standing argument and found that Sounhein presented evidence that defendants knowingly presented or caused to be presented a false or fraudulent claim for payment or approval in violation of the False Claims Act by executing and submitting various requests for reimbursement to the Fund "with the intent to divert those funds to others and not with the intent to reimburse Sounhein within the regulatory period," and that defendants use of such funds provided defendants with a competitive advantage in violation of the unfair competition law. Judgment was entered on August 9, 2010.

---

motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision . . . , or may decline to render any judgment until the close of all the evidence. . . . [¶] (b) If it appears that the evidence presented supports the granting of the motion as to some but not all the issues involved in the action, the court shall grant the motion as to those issues and the action shall proceed as to the issues remaining. Despite the granting of such a motion, no final judgment shall be entered prior to the termination of the action, but the final judgment in such action shall, in addition to any matters determined in the trial, award judgment as determined by the motion herein provided for. [¶] (c) If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment operates as an adjudication upon the merits."

On August 17, 2010, Sounhein filed a memorandum of costs, seeking $10,298.79 in total costs. Defendants moved to strike and/or tax Sounhein's costs, arguing Sounhein was not the prevailing party because his "focus throughout the litigation was on his False Claims Act cause of action, and not on the injunctive relief ultimately awarded . . . ." Alternatively, they argued that Sounhein should be denied all costs incurred after March 31, 2010, the date on which defendants made an offer to compromise pursuant to Code of Civil Procedure section 998, which Sounhein rejected. Finally, defendants argued that a number of the costs sought are not recoverable. The trial court rejected defendants' arguments, designated Sounhein the prevailing party, and awarded him $10,298.79 in costs.

## DISCUSSION

### I
### The Trial Court Erred in Concluding It Lacked Jurisdiction Over the False Claims Act Cause of Action

Sounhein contends the trial court erred in concluding that it lacked jurisdiction over the False Claims Act cause of action under section 12652, former subdivision (d)(3), because the information upon which that cause of action is based was not publicly disclosed, and even if it was, it was not disclosed in one of the statutorily enumerated forums. We agree.

An order granting a defense motion for judgment under Code of Civil Procedure section 631.8 in a nonjury trial is reviewed under the substantial evidence standard. (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc., supra,* 73 Cal.App.4th at p. 528.) We are bound by the trial court's findings that are supported by substantial evidence. (*People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes* (2006) 139 Cal.App.4th 1006, 1012.) "But, we are not bound by a trial court's interpretation of the law and independently review the application of the law to undisputed facts." (*Ibid.*)

As relevant here, the False Claims Act permits the recovery of civil penalties and

8

treble damages from any person who knowingly presents a false claim for payment to the state or a political subdivision or knowingly avoids an obligation to pay or transmit money to the same. (§ 12651, subds. (a)(1), (7).) A person may bring a civil action for violations of the False Claims Act for himself and state if any state funds are involved. (§ 12652, subd. (c)(1).) In such cases, the plaintiff is known as the *qui tam* plaintiff. (*Ibid.*)[8]

"The [False Claims Act], like its federal counterpart (31 U.S.C. § 3729 et seq.), erects a jurisdictional bar to *qui tam* actions that do not assist the government in ferreting out fraud because the fraudulent allegations or transactions are already in the public domain." (*State of California ex rel Grayson v. Pacific Bell Telephone Co.* (2006) 142 Cal.App.4th 741, 748 (*Grayson*).) Section 12652, former subdivision (d)(3)(A) provides, in part, that "[n]o court shall have jurisdiction over an action under this article based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in an investigation, report, hearing, or audit conducted by or at the request of the Senate, Assembly, auditor, or governing body of a political subdivision, or by the news media, unless . . . the person bringing the action is an original source of the information."

"The jurisdictional bar is 'triggered whenever a plaintiff files a *qui tam* complaint containing allegations or describing transactions "substantially similar" to those already in the public domain so that the publicly available information is already sufficient to place the government on notice of the alleged fraud.' [Citation.]" (*Grayson*, *supra*, 142 Cal.App.4th at p. 748.) "A *qui tam* plaintiff bears the burden of establishing that the exercise of the court's jurisdiction is proper." (*Ibid.*)

---

[8] The phrase "*qui tam*" is part of a Latin phrase meaning one " ' "who brings the action for the king as well as for himself." ' " (*City of Hawthorne ex rel Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1672, fn. 2.)

Here, Sounhein alleges defendants violated the False Claims Act by retaining reimbursement payments from the Fund for work Sounhein had done instead of paying him within 30 days or returning the payments to the Fund after certifying that it would do so. The trial court concluded that defendants' failure to pay Sounhein within 30 days or return the money to the Fund was publicly disclosed no later than early 2005 when Patton, the Fund manager, became aware of late payment issues relating to Big Oil.

" '[A] "public disclosure" requires that there be some act of disclosure to the public outside of the government. The mere fact that the disclosures are contained in government files someplace, or even that the government is conducting an investigation behind the scenes, does not itself constitute public disclosure.' " (*Mao's Kitchen, Inc. v. Mundy* (2012) 209 Cal.App.4th 132, 149, quoting *U.S. ex rel Rost v. Pfizer, Inc.* (1st Cir. 2007) 507 F.3d 720, 728.) As defendants point out, at least one federal circuit court had held that information is publicly disclosed within the meaning of the federal False Claims Act where the disclosure is made to a "competent public official . . . who has managerial responsibility for the very claims being made." (*U.S. v. Bank of Farmington* (7th Cir. 1999) 166 F.3d 853, 861 (*Farmington*), overruled on other grounds by *Glaser v. Wound Care Consultants, Inc.* (7th Cir. 2009) 570 F.3d 907, 920.)[9] As Fund manager, Patton's duties extended to "late payments," and thus, under *Farmington,* the fact that Big Oil made late payments to its service providers was publicly disclosed prior to 2007 when Sounhein first brought the issue to the Fund's attention. That the information was publicly disclosed, however, is not the end of the inquiry.

---

[9] The False Claims Act is modeled on the federal False Claims Act (31 U.S.C. § 3729 et seq.). (*State of California ex rel. Standard Elevator Co., Inc. v. West Bay Builders, Inc.* (2011) 197 Cal.App.4th 963, 973.) Accordingly, "it is appropriate to turn to federal cases for guidance in interpreting the [False Claims Act]." (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 802.)

Section 12652, former subdivision (d)(3)(A), clearly states that the jurisdictional bar applies only where the disclosure is "in a criminal, civil, or administrative hearing, in an investigation, report, hearing, or audit conducted by or at the request of the Senate, Assembly, auditor, or governing body of a political subdivision, or by the news media . . . ." As this court recognized in *Grayson*, "the [False Claims Act] limits a court's jurisdiction when public disclosures were made in *specific venues*." (*Grayson, supra,* 142 Cal.App.4th at p. 750, italics added; see also *Farmington, supra,* 166 F.3d at p. 862 ["The jurisdictional bar and the 'original source' exception operate only when the information upon which a *qui tam* claim is based is publicly disclosed in a 'criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media.' 31 U.S.C. § 3730(e)(4)(A)."]

In *Grayson*, the defendants asserted that the plaintiff's alleged fraud was disclosed in the news media. (*Grayson, supra,* 142 Cal.App.4th at p. 750.) Here, defendants do not specifically identify in which of the statutorily enumerated forums the disclosure was made. They assert only that the information was disclosed during the course of the Fund's "own auditing process with respect to whether or not reimbursement [*sic*] were paid -- and paid on time -- by claimants to their vendors." Assuming for arguments sake that the Fund's routine process of verifying that claimants are paying their service providers in a timely manner by requiring claimants to submit copies of cancelled checks can fairly be construed as an "audit," there is no evidence that the audit was "conducted by or at the request of the Senate, Assembly, auditor, or governing body of a political subdivision . . . ." (§ 12652, former subd. (d)(3)(A).)

There is no question that the purported audit was not conducted by or at the request of the Senate, Assembly, or governing body of a political subdivision, which section 12650, former subdivision (b)(5), now subdivision (b)(6), defines as "any city, city and county, country, tax or assessment district, or other legally authorized local

11

governmental entity with jurisdictional boundaries." Thus, the question is whether the purported audit was conducted by or at the request of "the . . . auditor." (§ 12652, former subd. (d)(3)(A).) The use of the article "the" signifies a particular auditor, here the State Auditor. Had the Legislature intended to divest trial courts of jurisdiction over actions based on information disclosed in an investigation, report, hearing, or audit conducted by or at the request of *any* auditor, it would have used the indefinite article "an." By failing to do so, the Legislature indicated its intent to limit the jurisdictional bar to information disclosed in an investigation, report, hearing, or audit conduct by or at the request of the State Auditor.

Such an intent is confirmed in an analysis of the False Claims Act before its enactment, prepared by the Center for Law in the Public Interest (Center), which was the "source" of the bill in the California Assembly and also the drafter of the federal enactment. (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1441 (1987–1988 Reg. Sess.) as amended Sept. 8, 1987, p. 1, 4; see also *State ex rel. Harris v. PricewaterhouseCoopers, LLP* (2006) 39 Cal.4th 1220, 1230 [stating that the Center "participated in drafting both the current federal and California false claims statutes"]; *State of California v. Altus Finance* (2005) 36 Cal.4th 1284, 1296 [describing the Center as the "principal drafter of the statute"].) The analysis, which was provided to the author of the bill and was before the Senate and Assembly Judiciary Committees, states that former "[s]ub[division] (d)(3) disallows jurisdiction for *qui tam* actions based on allegations or transactions disclosed . . . in an investigation, report, hearing, or audit conducted by or at the request of the State Senate, State Assembly, State Auditor, or governing body of a political subdivision . . . ." (Center, Cal. False Claims Act Section-by-Section Analysis (1987) § 5(d), p. I.2-8, appen. to Boese, Civil False Claims and Qui Tam Actions (2011); see also *San Francisco Unified School Dist. ex rel. Contreras v. Laidlaw Transit, Inc.* (2010) 182 Cal. App. 4th 438, 449 [relying on the Center's analysis in interpreting the False Claims Act]; *Armenta ex rel. City of Burbank*

12

*v. Mueller Co.* (2006) 142 Cal.App.4th 636, 648 [same]; *Laraway v. Sutro & Co.* (2002) 96 Cal.App.4th 266, 275 [same].)

Because the disclosure relied upon here was not made in any of the statutorily enumerated forums, Sounhein's False Claims Act cause of action is not subject to the jurisdictional bar set forth in section 12652, former subdivision (d)(3)(A).[10] Accordingly, the trial court erred in granting defendant's motion for judgment as to the first cause of action.

II
Defendants' Appeal of the Cost Award Is Premature

Defendants contend the trial court erred in denying their motion to strike and/or tax Sounhein's costs and awarding Sounhein costs in excess of $10,000. Defendants base their contention primarily on Sounhein's failure to prevail on his False Claims Act cause of action or obtain any monetary relief. Given our reversal of the judgment in defendants' favor as to the False Claims Act cause of action, coupled with the trial court's determination that defendants violated the False Claims Act in connection with the unfair competition cause of action, we conclude that a determination of the issues raised in defendants' appeal would be premature. Defendants may raise those issues in an appeal from the judgment entered after a new trial.

DISPOSITION

The judgment is reversed as to the False Claims Act cause of action (first cause of action), and the matter is remanded to the trial court with directions to conduct a new trial limited to determining the amount of penalties and damages, liability having been

_____

[10] Because we conclude that the information was not disclosed in one of the statutorily enumerated forums, we need not address Sounhein's claim that he was the original source of the information.

13

established.  The judgment is affirmed in all other respects.  Sounhein shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

                                                    BLEASE               , Acting P. J.

We concur:

      HULL               , J.

      ROBIE             , J.