Filed 2/25/25  P. ex rel. Limpin v. Newsom CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE ex rel. MELCHOR KARL T. LIMPIN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>GAVIN NEWSOM et al.,<br><br>    Defendants,<br><br>THE STATE OF CALIFORNIA,<br><br>    Respondent, | D083733<br><br><br>(Super. Ct. No. 37-2023-00008156-CU-FR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Melchor Karl T. Limpin, in pro. per., for Plaintiff and Appellant.

No appearance for Defendants.

Rob Bonta, Attorney General, Jennifer Euler, Chief Assistant Attorney General, Nicholas N. Paul, Assistant Attorney General, Quisteen S. Shum and Evan J. Topol, Deputy Attorneys General, for Respondent.

# I. INTRODUCTION

The California False Claims Act (CFCA) allows a private citizen to bring a lawsuit on behalf of "the State of California . . . if any state funds are involved" in a fraudulent use.  (Gov. Code,[1] § 12650 et seq.)  These are referred to as qui tam actions.

Melchor Karl T. Limpin brought a CFCA suit based on legislation allowing certain benefits to non-United States citizens residing in California.  The State of California successfully moved the trial court to dismiss Limpin's qui tam suit.  Limpin appeals from that ruling, challenging all three grounds on which the dismissal order relied:[2]  Because we conclude the trial court properly decided the state showed it had good cause to support dismissal, we need not reach the other grounds asserted.

Finally, Limpin argues the trial court improperly used a local rule to avoid addressing the substance of his request to join the Attorney General as a necessary party.  He is incorrect because the trial court also denied the joinder request on the merits.  Accordingly, we affirm.

# II. BACKGROUND

Limpin filed his qui tam action in 2023.  In his first amended complaint (FAC), Limpin named as defendants Governor Gavin Newsom, State Senator Toni G. Atkins, State Assembly member Anthony Rendon, and "all

---

[1]  All undesignated section references are to the Government Code.

[2]  Limpin claimed the court made three erroneous findings:  (1) that it lacked jurisdiction over the matter because it was based on evidence known already to the state; (2) even if the court had jurisdiction, that he did not demonstrate that he is the original source of information underpinning the suit, rather the information was in the public domain; and (3) that good cause did not exist to dismiss his action.

undocumented foreigners who used a Federal [individual taxpayer identification number (ITIN)[3]] working in California and their respective employers in California." The FAC alleges a fraudulent scheme amongst the defendants where "undocumented foreigners" obtained billions of dollars in public funds by filing invalid tax returns to receive Medi-Cal benefits and COVID-19 stimulus payments. Without identifying what Limpin calls "undocumented foreigners," the FAC alleges they fraudulently used ITIN's to obtain public benefits because they did not obtain proper authorization from the federal government to work in the United States. The unnamed employers allegedly illegally harbored and employed these workers.

As for Newsom, Atkins, and Rendon, the FAC alleges they "colluded to considerably influence[ ] state legislation, knowingly assisted, which is grounded in fraud, to enable an undocumented foreigner (i.e., smuggle into the country or did not ask permission to enter the country) to acquire a federal ITIN and receive public funds from the state [sic] of California." Limpin bases these claims on the enactment of Senate Bills Nos. 88 ((2021–2022 Reg. Sess.); Stats. 2021, ch. 8, § 9) and 139 ((2021–2022 Reg. Sess.); Stats. 2021, ch. 71, § 5), which provided relief to low-income Californians impacted by COVID-19, including undocumented persons; Senate Bill No. 184 ((2021–2022 Reg. Sess.); Stats. 2022, ch. 47, § 82), which expanded Medi-Cal benefits to individuals without satisfactory immigration status; and Assembly Bill No. 1766 ((2021–2022 Reg. Sess.); Stats. 2022, ch. 482, § 10), which authorized identification cards for individuals incapable of proving their immigration status.

---

[3]    An ITIN is an IRS-issued number that allows non-United States citizens to report taxable income and comply with federal tax laws. (See 26 C.F.R. § 301.6109-1, subd. (d)(3)(i).)

As required, Limpin served the Attorney General with all material evidence in support of his claims (§ 12652, subd. (c)(2)), specifically, three documents and a photograph. The first document was a "Golden State Stimulus and Golden State Grant Payment Report" prepared by the California Franchise Tax Board (FTB) showing that COVID-19 stimulus payments under Senate Bill No. 88 went to approximately 640,000 individuals who used an ITIN. Second, Limpin submitted the FTB's bill analysis of Senate Bill No. 139, projecting an $8.1 billion loss from the law. Third, Limpin produced a report from the Unites States Department of Labor reflecting that 32,333 temporary agricultural work visas were issued for California in 2021. From these documents, as well as the congressional cap of 66,000 non-agricultural temporary work visas, Limpin surmised fraud because the people who obtained benefits by using an ITIN " 'significantly exceeded' the allowable number of foreigners to work [in] California in 2021."

The photograph Limpin relied on was taken on July 10, 2023, and depicted a bus stop advertisement from San Ysidro Health. The advertisement is in Spanish and unaccompanied by a certified translation, but according to Limpin, it explained how to obtain Medi-Cal coverage. Limpin urged the state to investigate San Ysidro Health because it "knowingly assists illegal aliens or foreigners working in California who are de facto 'not qualified' aliens under 8 U.S.C. § 1641(b), by making them qualify and inform [sic] them to maintain Medicaid or California Medi-Cal Benefits Identification Cards."

Limpin filed the FAC under seal on April 17, 2023. By statute, the matter remained under seal for up to 60 days unless extended for good cause

4

upon the Attorney General's request.  (§ 12652, subd. (c)(2) & (5).)[4]  On September 28, 2023, the trial court granted the Attorney General's unopposed request to extend the seal period to investigate and contemplate whether to intervene in the action.  The court extended the seal period to November 20, 2023.

The Attorney General decided to intervene in the lawsuit and seek dismissal.  (§ 12652, subd. (e).)  On November 21, 2023, the trial court granted the Attorney General's ex parte application to set a hearing for the state's motion to dismiss the action and to further extend the seal period.  (§12652, subd. (e)(2)(A).)  After hearing from the parties, the court set the motion for January 26, 2024, extending the sealing deadline to that date.

On January 3, 2024, the state filed its motion, seeking dismissal on three grounds.  First, the state asserted the court lacked jurisdiction under section 12652, subdivision (d)(1),[5] because Newsom, Atkins, and Rendon were elected officials, and the action was based on information known to the state.  Second, the state sought dismissal under section 12652,

---

[4]    "The purpose of this sealing requirement is to prevent defendants from learning 'prior to intervention by the government, that they are under investigation.' "  (*State ex rel. Edelweiss Fund, LLC v. JP Morgan Chase & Co.* (2020) 58 Cal.App.5th 1113, 1117.)

[5]    Section 12652, subdivision (d)(1), states in relevant part:  "No court shall have jurisdiction over an action brought under subdivision (c) against a Member of the State Senate or Assembly, a member of the state judiciary, an elected official in the executive branch of the state, or a member of the governing body of any political subdivision if the action is based on evidence or information known to the state or political subdivision when the action was brought."

subdivision (d)(3),[6] arguing the action was impermissibly based on public information.

Finally, the state argued it had good cause to dismiss the case, characterizing it as a grievance about legislation. According to the state, Limpin's complaint about the enactments was speculative and unsupported by evidence. Based on the scope of the alleged fraudulent scheme involving 640,000 unknown individuals, and the lack of any evidence of that scheme, the state argued it could not justify expending resources in pursuit of the action. The state also asserted that although named in their individual capacities, the allegations against Newsom, Atkins, and Rendon involve actions taken in their official capacities; therefore, these defendants would have strong immunity claims that would require significant resources to litigate in pretrial motions. The state concluded it was unlikely any individual defendant could satisfy a judgment against him or her, which Limpin estimated "to be in the hundreds of millions or billions of dollars." The state submitted a declaration from Deputy Attorney General Evan J. Topol attesting to these facts and stating that he unsuccessfully met and conferred with Limpin in person.

Limpin filed an opposition to the dismissal motion, reasserting his claims without any new evidence. He requested appointment of an expert to identify the "640,000 Doe defendants" named in his complaint and to verify whether they have satisfactory proof of their immigration status. In an

_____

6    Section 12652, subdivision (d)(3)(A) states in relevant part: "The court shall dismiss an action or claim under this section . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed [in any of several ways]."

6

"Additional Response in Opposition to the Motion," Limpin moved for an order to join the Attorney General as a necessary party.

On January 26, 2024, the trial court granted the motion on all three grounds raised by the state. In assessing good cause, the trial court compared the merits of the action to the potential waste of government resources. It determined that "[d]espite the FAC presenting no evidence of actual fraud and being based on unsubstantiated claims derived entirely from publicly available government documents, the opposition demands an investigation into over 640,000 potential defendants and the appointment of various experts to support these claims. Conversely, the state has presented evidence of the difficulty of investigating and prevailing on Limpin's speculative claims, the substantial burden on the state's resources, and the limitations on any potential recovery from individual defendants." The trial court therefore found good cause to dismiss the qui tam action.

The trial court also denied Limpin's motion to join the Attorney General as a party on two independent grounds. First, it determined Limpin failed to obtain a hearing date for the motion as required under the Superior Court of San Diego County's Local Rules, rule 2.1.19 (Rule 2.1.19).[7] Second, the trial court found the motion lacked merit because the Attorney General already represented the state in the action, and neither the state nor the Attorney General are required to pursue a non-meritorious qui tam action.

However, acknowledging that outside the qui tam portion of the lawsuit, Limpin appeared to have also brought claims on behalf of himself,

---

[7] Rule 2.1.19, subdivision (A), states, "[a]ny party, or attorney for a party, who desires to have any . . . motion . . . set for hearing must reserve a hearing date . . . . Failure to reserve a date for hearing will result in the . . . motion . . . not being heard."

the trial court granted Limpin leave to file a second amended complaint in his individual capacity and only as to the named defendants.

On February 20, 2024, Limpin appealed the trial court's dismissal of his qui tam action. That same day, Limpin filed a second amended complaint (SAC) in his individual capacity. The SAC is against the same defendants and alleges the same fraudulent scheme as the FAC.

## III. DISCUSSION

### A. Qui Tam Actions Under the CFCA

" 'The CFCA permits the recovery of civil penalties and treble damages from any person who knowingly presents a false claim for payment to the state.' " (*Mao's Kitchen, Inc. v. Mundy* (2012) 209 Cal.App.4th 132, 146.) The CFCA "authorizes private parties, referred to as qui tam plaintiffs or relators, to prosecute the claim for, and in the name of, a government entity." (*State ex rel. Bartlett v. Miller* (2016) 243 Cal.App.4th 1398, 1405–1406.)

However, "[t]he state . . . may seek to dismiss the action for good cause notwithstanding the objections of the qui tam plaintiff if the qui tam plaintiff has been notified by the state . . . of the filing of the motion and the court has provided the qui tam plaintiff with an opportunity to oppose the motion and present evidence at a hearing." (§ 12652, subd. (e)(2)(A).) Good cause "exists where the dismissal is rationally related to a legitimate government purpose, and not arbitrary, capricious, made in bad faith, based on improper or illegal motives, founded on an inadequate investigation, or pretextual. In exercising its discretion the trial court may consider any matter relevant to the issue, including the relative merits of the action, the interest of the qui tam plaintiff, the purposes underlying the [CFCA], and the potential waste of government resources." (*Laraway v. Sutro & Co.* (2002) 96 Cal.App.4th 266, 275–276.)

We review the trial court's determination of good cause for abuse of discretion. (*Laraway v. Sutro & Co.*, *supra*, 96 Cal.App.4th at p. 273.) Under this "onerous test," discretion is abused when " 'the court exceeds the bounds of reason.' " (*Burton v. Sanner* (2012) 207 Cal.App.4th 12, 18.)[8]

## B. The Challenged Ruling is Appealable

Relying on the SAC, the state argues the order dismissing the FAC is not a final appealable order because it did not resolve all of Limpin's causes of action. However, an order that leaves no issues to be determined as to one of the parties is considered final as to that party and, therefore, appealable. (*Heshejin v. Rostami* (2020) 54 Cal.App.5th 984, 991.) Similarly, when a party appears in multiple capacities, an order finally determining the party's rights in one of those capacities is separately appealable. (*First Security Bank of Cal. v. Paquet* (2002) 98 Cal.App.4th 468, 474.)

By granting the motion to dismiss, the trial court finally determined Limpin's rights in his capacity as a representative for the state. As such, Limpin may appeal the dismissal of his qui tam action even though he continues to litigate similar claims in his personal capacity.

## C. The Trial Court Did Not Abuse its Discretion in Finding Good Cause to Dismiss the Qui Tam Action

---

8 Although federal decisions are persuasive when interpreting the CFCA because the California statute "is patterned on similar federal legislation[,] . . . the federal legislation contains no good cause requirement for dismissal of a qui tam action by the government." (*Laraway v. Sutro & Co.*, *supra*, 96 Cal.App.4th at p. 275.) We therefore rely on California decisions interpreting the CFCA's good cause requirement instead of the federal cases cited by Limpin. We note, however, that the result would be the same under federal standards, where "the Government's views are entitled to substantial deference." (*United States ex rel. Polansky v. Exec. Health Res., Inc.* (2023) 599 U.S. 419, 437.)

Limpin argues the trial court erred in finding good cause to dismiss his qui tam action. He claims the Attorney General hastily decided to dismiss the action during the 60-day seal period. Limpin also asserts the Attorney General failed to respond to discovery, did not provide notice of whether it intended to intervene, improperly appeared as counsel for the defendants, and did not adequately investigate his claims. Limpin further contends he was deprived meaningful access to the court.

Limpin's claims regarding court access and the Attorney General's haste, response to discovery, and notice of its intervention intentions are not supported by any citations to the record as required. (Cal. Rules of Court, rule 8.204(a)(1)(C).) Additionally, based on the record provided, these claims lack merit.

The Attorney General did not injudiciously seek dismissal within the original 60-day seal period. Instead, the Attorney General obtained an extension of the sealing period so it could make its intervention determination. The Attorney General then decided to seek dismissal around November 21, 2022, when it obtained a hearing date for its motion to dismiss, which was approximately seven months after Limpin filed the FAC.

The trial court extended the seal period a second time to January 26, 2024, to coincide with the dismissal motion's hearing date. By statute, this also extended the deadline for the Attorney General's intervention decision to January 26, 2024. (§ 12652, subd. (c)(6).) When the trial court dismissed the qui tam action on January 26, 2024, there was no longer a matter for the Attorney General to intervene in, rendering notice of an intervention decision unnecessary.

Nor was there any deprivation of access to the courts. Consistent with section 12652, Limpin was present when the trial court calendared the

hearing on the motion to dismiss, the state served Limpin with its motion, and Limpin had an opportunity to oppose the motion and present evidence because he filed written oppositions and personally appeared at the hearing. (§ 12652, subd. (e)(2)(A).)

As for the Attorney General's alleged failure to respond to discovery, the record is silent as to when and if any discovery was properly served on the Attorney General. We therefore presume there was no error in this regard. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)

Turning to the claim that the Attorney General improperly appeared as attorney for Newsom, Atkins, and Rendon, we disagree. Limpin supports this claim with a citation to the state's motion to dismiss where the Attorney General argued, on the state's behalf, that Newsom, Atkins, and Rendon would likely claim immunity in response to the qui tam action. This was merely one of the state's reasons for finding the qui tam suit lacked merit, and neither it nor anything else in the record indicates the Attorney General appeared as defendants' counsel.

Finally, we see no abuse of discretion regarding the adequacy of the Attorney General's investigation. The Attorney General accurately characterized the FAC as a grievance about legislation which Limpin based on his speculation and that Limpin's allegations were unsupported by evidence. Indeed, Limpin's information merely showed that undocumented individuals received public benefits, which was the purpose of the laws he criticized and does not demonstrate fraud.

The Attorney General also explored several hurdles the FAC faced, which would require significant state resources to overcome. In addition to the jurisdictional and public disclosure bars it raised under section 12652, the state correctly recognized that the allegations against Newsom, Atkins, and

11

Rendon involve actions taken in their official capacities; therefore, these defendants would likely have successful immunity claims. (See, e.g., *People ex rel. Harris v. Rizzo* (2013) 214 Cal.App.4th 921, 940 [" 'legal action may not be taken against [legislators] for their activities involving planning or enacting legislation' "]; *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1193 ["governmental agencies . . . may not be sued under California's false claims statute"].) The state also considered the extensive discovery the case would require given that the 640,000 undocumented individuals involved in the alleged scheme were unidentified. Lastly, the state explored the probability of satisfying any judgment against the individual defendants, which it found unlikely.

The record demonstrates that the Attorney General reasonably assessed the lack of evidence supporting the FAC against the lawsuit's numerous and costly obstacles. This was a sufficient investigation under the circumstances, and it does not demonstrate that the trial court's good cause determination was beyond the bounds of reason.

We conclude the trial court did not abuse its discretion in finding good cause to dismiss the qui tam action.

D.    *The Trial Court Did Not Avoid Substantive Issues Through Rule 2.1.19*

Limpin argues that by applying Rule 2.1.19, the trial court improperly avoided the substantive issue of whether the Attorney General should be joined as a party. We disagree. After stating that it could have denied the joinder request based on Rule 2.1.19 alone, the trial court addressed the

12

motion's merits[9] and denied it on that ground as well.[10]  Limpin has therefore failed to show reversal is warranted on this ground.

## IV. DISPOSITION

The order is affirmed.  The State of California is awarded costs on appeal.

RUBIN, J.

WE CONCUR:


DATO, Acting P. J.


DO, J.

---

[9]    The trial court stated, "Limpin's grounds for opposition based on joinder lack merit.  First, the state of California is already party to this action and represented by the Attorney General of California.  Second, Limpin's complaint has been brought pursuant to the False Claims Act.  Contrary to Limpin's argument, the state and the Attorney General are not required to pursue a non-meritorious suit brought under the False Claims Act and can properly move to dismiss the action for good cause, notwithstanding the qui tam plaintiff's objections."

[10]    We note that Limpin does not challenge the trial court's ruling on the merits.